46 F.3d 1152
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James SELKIN, Plaintiff-Appellant,
v.
Donald E. MIELKE, District Attorney for the First Judicial
District; and Dana Easter, Deputy District
Attorney for the First Judicial
District, Defendants-Appellees.
 No. 94-1102.
 United States Court of Appeals, Tenth Circuit.
 Jan. 5, 1995.
 
 Before MOORE, ANDERSON and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Psychologist James Selkin appeals the district court's summary judgment dismissing on absolute and qualified immunity grounds his two claims under 42 U.S.C.1983[2] against the prosecutors of one of his clients and declining to exercise supplemental jurisdiction over a state law claim. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 BACKGROUND
 
 3
 Dr. Selkin is a Denver clinical psychologist who was retained during December 1991 and January 1992 to provide psychological evaluation and therapy for a man, "Mr. A," who had sexually abused his daughter. Mr. A's attorney referred him to Dr. Selkin. Criminal charges were filed in December 1991, and sometime before January 14, 1992, Mr. A's attorney reportedly advised Dr. Selkin that Deputy District Attorney Dana Easter would refuse to plea bargain Mr. A's case if he continued to see Dr. Selkin. See Plaintiff/Appellant's App. at 18. Mr. A stated that on March 17, 1992, without his lawyer present, Ms. Easter personally required him to stop seeing Dr. Selkin and to enter treatment in a different program if he wished to consummate a plea bargain. See id. at 15. Defendants disputed below that this requirement was ever a term of the plea bargain, but they argued that resolution of the factual issue was not material to the immunity questions. See Defendants/Appellees' Supp.App. at 4, 6. The district court found that Ms. Easter had conditioned the plea bargain on Mr. A's discontinuation of treatment with Dr. Selkin. See Hearing--Defendant's Motion for Summary Judgment, Partial Transcript, Supp. to Plaintiff/Appellant's Opening Br., Doc. 2 at 2.
 
 
 4
 Dr. Selkin retained counsel in January 1992, who began communications with then-District Attorney Donald E. Mielke. Mr. Mielke delegated the task of answering Dr. Selkin's counsel's inquiries to Assistant District Attorney Charles W. Heim. Mr. Heim denied that anyone in the office had forced Mr. A to terminate Dr. Selkin's services, and he refused to discuss the plea bargain with Dr. Selkin's attorney. Mr. A stopped seeing Dr. Selkin, who refunded the bulk of the money Mr. A had paid him. On July 21, 1992, Mr. A was sentenced to probation pursuant to the plea bargain, the written terms of which made no mention of Dr. Selkin. See Plaintiff/Appellant's App. at 30-31; Defendants/Appellees' Supp.App. at 11-12.
 
 
 5
 The extent of the record before us on why Ms. Easter told Mr. A not to see Dr. Selkin is contained in two documents. The first is Mr. Heim's April 1, 1992, letter to Dr. Selkin's attorney, in which he stated:
 
 
 6
 We will not be intimidated into accepting services provided by third party providers (including Dr. Selkin) when we do not feel that those services, or the manner in which they are delivered, or the monitoring of the defendant receiving them, are appropriate or adequate for the defendant involved.
 
 
 7
 Plaintiff/Appellant's App. at 24. The second is an answer to an interrogatory seeking "all criticisms perceived and or stated by Dana Easter, Esq., with regard to the Plaintiff's services, the manner in which they were delivered, and the manner of monitoring those services provided by the Plaintiff." Ms. Easter replied:
 
 
 8
 James Selkin, Ph.D., is known to be very "defense oriented"--by his own admission; he does not insist on an admission to the crime and to the sexual intent of the defendant, before allowing the defendant into treatment. Dr. Selkin does not do a thorough "up-front" psychological evaluation of the defendant. Dr. Selkin does not require that defendants sign a waiver of confidentiality permitting information received by him in the course of defendant's treatment to be revealed to the District Attorney or to the Probation Department.
 
 
 9
 I perceive it to be a conflict to provide treatment to both a defendant and his victim in the same clinic at the early stages of treatment. Dr. Selkin does not perform physiological monitoring of defendants compliance with treatment. Selkin also apparently believes that if there is no prior history of deviant sexual conduct between a defendant and a child, and the defendant continually denies such contact, then the child must be lying.
 
 
 10
 Defendants/Appellees' Supp.App. at 62.
 
 
 11
 Dr. Selkin vigorously disputes the truth of these characterizations. See Plaintiff/Appellant's Reply Br. at 7-8; Selkin Aff., Plaintiff/Appellant's App. at 13-14.
 
 
 12
 Dr. Selkin alleged that as a result of the actions of Ms. Easter and Mr. Mielke, he suffered the loss of most of the fee Mr. A had paid him in advance, and his referrals from Mr. A's lawyer and others declined. See Selkin Aff., Plaintiff/Appellant's App. at 13; Plaintiff/Appellant's Opening Br. at 6.
 
 DISCUSSION
 
 13
 I. Declaratory and Injunctive Relief and State Law Claim.
 
 
 14
 In addition to dismissing Dr. Selkin's damages claims, the district court appears to have dismissed on immunity grounds his claims for declaratory and injunctive relief, which generally are not subject to immunity defenses. See Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 736-37 (1980); Lemmons v. Morris & Morris, No. 94-5048, 1994 WL 593276, at * 2 (10th Cir. Nov. 1, 1994). On appeal, however, Dr. Selkin does not address either this aspect of the dismissal or the court's refusal to hear his state law claim, so any argument he might have had for preserving these claims is waived. Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 n. 2 (10th Cir.1994); Phillips v. Calhoun, 956 F.2d 949, 954 (10th Cir.1992); Jordan v. Bowen, 808 F.2d 733, 736 (10th Cir.), cert. denied, 484 U.S. 925 (1987); Fed. R.App. P. 28(a)(3) & (5).
 
 
 15
 II. Absolute Immunity from Section 1983 Damages Claims.
 
 
 16
 The district court's summary disposition of Dr. Selkin's section 1983 damages claims on grounds of immunity presents legal questions, which we review de novo. Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir.1994); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir.1991).
 
 
 17
 Siegert v. Gilley, 500 U.S. 226, 232 (1991), would require us to address the district court's determination of qualified immunity only after first deciding whether Dr. Selkin has asserted the violation of a constitutional right at all. But we need not similarly begin by analyzing the substance of the claims where prosecutorial immunity is dispositive; prosecutorial immunity turns on an analysis of the functions in which the prosecutor was engaged, see, e.g., Buckley v. Fitzsimmons, 113 S.Ct. 2606, 2613 (1993); rather than on a determination of whether the plaintiff's rights existed and were clearly established.
 
 
 18
 Prosecutors are absolutely immune from suit when their conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). We have held that plea bargaining is such an activity. Pfeiffer, 929 F.2d at 1492 (citing Hammond v. Bales, 843 F.2d 1320, 1321-22 (10th Cir.1988), and Taylor v. Kavanagh, 640 F.2d 450, 453 (2d Cir.1981)).
 
 
 19
 Dr. Selkin does not dispute this principle; rather, he seeks to distinguish his situation. His argument has shifted as the case has progressed. In his complaint, he maintained that as "part and parcel of this plea bargain," Ms. Easter required Mr. A to stop seeing Dr. Selkin. Plaintiff/Appellant's App. at 2, 1/2 10. In opposition to summary judgment, he argued that Ms. Easter's requirement was not a part of the plea bargain but rather surplusage, extraneous conduct occurring contemporaneously with the plea bargain but unrelated to it and beyond Ms. Easter's responsibilities as a prosecutor. Defendants/Appellees' Supp.App. at 24-26. On appeal he argues that the instruction was a "precondition to a plea bargain, and was not part of the plea bargain." Plaintiff/Appellant's Opening Br. at 9. He also calls it "a loose exercise of proscribed acts under color of authority." Id. at 17. In his reply brief, he calls it "advice" preliminary to the plea bargain discussions and not a part of the bargain. Plaintiff/Appellant's Reply Br. at 9.
 
 
 20
 However much Dr. Selkin now wants to separate Ms. Easter's statement from the plea bargain, he still does not dispute that Ms. Easter made the termination of his services a prerequisite to plea negotiations. Whether or not the district court correctly found that the requirement was among the final terms of the plea agreement, it clearly was a part of the plea negotiation process to which prosecutorial immunity applies.[3]
 
 
 21
 With respect to the immunity of Ms. Easter's superior, Dr. Selkin errs in characterizing Mr. Mielke's actions as limited to "directing responses, through a deputy, to two letters." Plaintiff/Appellant's Opening Br. at 10. As the complaint demonstrates, the action for which Dr. Selkin is suing Mr. Mielke is the latter's refusal, in those written responses, to rescind Ms. Easter's plea bargain precondition. Since Ms. Easter's action is immune as part of the plea bargaining process, Mr. Mielke's deliberate decision not to reverse her is also protected as part of the same process.
 
 
 22
 We therefore AFFIRM the district court's judgment.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Although the first claim for relief is titled "Civil Rights, 42 USC 1983," and the second is labeled "Freedom of Association, 14th Amendment to the United States Constitution," the second claim specifically incorporates the paragraphs of the first. As did the district court, we read both as claims under 42 U.S.C.1983. See Transcript, Bench Ruling on Summary Judgment, Plaintiff/Appellant's App. at 36. The first claim alleges a deprivation without due process of Dr. Selkin's liberty to practice his profession and of property interests in his contract with Mr. A and related fees. The second claim alleges a deprivation of his freedom of association with Mr. A under the 14th Amendment. Complaint, 1/2 1/2 13, 21, Plaintiff/Appellant's App. at 2-3
 
 
 [3]
 Ms. Easter, in listing the terms of the plea bargain at the plea hearing, did not mention the requirement concerning Dr. Selkin. In describing Mr. A's status in therapy, Mr. A's lawyer stated that his client had been "forced, your Honor, by Miss Easter to vacate Darrow [Dr. Selkin's clinic] for whatever reasons, it's not very clear to me." Plaintiff-Appellant's App. at 27. Mr. A's attorney did not discuss this explicitly as being part of the plea bargain. We note that the Defendants did not concede that the Selkin requirement was part of the plea agreement, arguing instead that even if it were, this fact would be immaterial to the immunity determination. Since we need not decide this factual issue, we confine ourselves to observing that we would look with disfavor upon any inclusion of undisclosed terms in a plea agreement. "It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties." Baker v. United States, 781 F.2d 85, 90 (6th Cir.), cert. denied, 479 U.S. 1017 (1986)